**In re INTERSTATE DEPARTMENT STORES, INC., Debtor.**

**Bankruptcy No. 90–12090.**

United States Bankruptcy Court, N.D. New York.

June 13, 1991.

---

Donna Quinn, De Graf, Foy, Conway, Holt–Harris & Mealey, Albany, N.Y., for KBT Associates, Inc.

Herman A. Bursky, Shea & Gould, New York City, for Toy's "R" Us.

Robert Shulman, Roslyn, N.Y., for Kimco of Michigan, Inc.

William Crawforth, Detroit, Mich., for Comcast Sound Communications, Inc.

Louis Testa, Deily, Testa & Dautel, Albany, N.Y., for Allied Business Communications.

Peter Pastore, McNamee, Lochner, Titus & Williams, P.C., Albany, N.Y., for Forest City Management, Inc.

O'Connell & Aronowitz, Albany, N.Y., for Capital Newspapers.

George Hill, Consumers Power Co., Jackson, Miss.

Christopher Koseter, Albert S. Watkins, St. Louis, Mo., for Miss Elain, Inc.

Patrick Mackrell, Chamberlain, D'Amanda, Oppenheimer & Greenfield, Albany, N.Y.

Kevin Purcell, Office of the U.S. Trustee, Albany, N.Y.

Thomas Dussault, Lee & LeForestier, Troy, N.Y.

Gregory Harris, Dulin, Harris & Bixby, Albany, N.Y.

Jay R. Indike, Siegel, Sommers & Schwartz, New York City.

Scott Rusczyk, Siegel, Sommers & Schwartz, New York City.

## ORDER ALLOWING DEBTOR'S COUNSEL INTERIM FEES

JUSTIN J. MAHONEY, Chief Judge.

Debtor's counsel, Lee and LeForestier have applied for interim compensation in the amount of $63,012.00 in fees and $1,632.71 in expenses. The services were rendered during the period July 17, 1990 through November 30, 1990, when this case was operating under chapter 11.

Counsel seeks to recover its requested allowance from a pre-petition retainer which it is holding in escrow in the amount of $66,377.00.[1] Of this sum, $30,000 was paid by a third party, Manta Investments, Inc, and the balance was paid by the debtor from its operating account. On December 20, the court allowed $15,000 to debtor's counsel and reserved decision due to asserted objections to the balance of the application for a determination as to whether any other party has a prior secured right to the money taken as a pre-petition retainer.

Citicorp North America, Inc. ("Citicorp" or "Bank") asserts a duly perfected security interest in all of the property of the debtor, including debtor's inventory and proceeds thereof. As recited in its papers, Citicorp claims a superior interest in the $45,000 paid from the debtor's operating account "... representing proceeds of the

---

1. The original retainer was $75,000. The difference ($8,623) represents the amount of the retainer applied to cover pre-petition services.

sale of debtor's inventory." (C.P. No. 88, and par. 5). On the assumption that Citicorp has a prior secured interest in the $45,000 portion of the retainer paid from the debtor's operating account, the United States Trustee has joined Citicorp in objecting to having the retainer applied to debtor counsel's fees absent Citicorp's consent. (C.P. No. 73).

■ No factual predicate exists, however, to support the objection raised by Citicorp. From the record established to date in these proceedings, it appears that the debtor maintained two separate accounts in First American Bank. The first account was a "blocked account" for the deposit of all monies collected by the debtor from receivables and the sale of inventory. Citicorp had the exclusive right to withdraw money from this account, which it regularly applied to the outstanding loan balance owed by the debtor. A second account, which was also located at First American Bank, was the debtor's operating account. It was funded by a revolving loan extended by Citicorp in accordance with a formula set forth under section 2 of the Bank's Loan and Security Agreement. While the money advanced was tied to the value of receivables and inventory, it appears that any monies in the operating account were monies advanced pursuant to the loan advance formula and did not constitute any sales of inventory or collections on receivables. As an operating account, the debtor had full use and control of this account from which the $45,000 was withdrawn and paid to debtor's counsel pre-petition.

Section 9–306 of the New York Uniform Commercial Code defines proceeds as: "whatever is received upon the sale, exchange, collection or other disposition of collateral." N.Y.U.C.C. § 9–306 (McKinney's 1990).

The court finds that the monies from Citicorp which constitute readvances to the debtor when deposited into the operating account do not constitute "proceeds" within the meaning of N.Y.U.C.C. § 9–306. There is a distinction between proceeds and readvances. See *Gold Kist, Inc. v. Majors*, 533 So.2d 223, 7 U.C.C.Rep.Serv.2d 1236 (Ala. 1988).

In order for Citicorp to be secured in the monies held in debtor's operating account, it would have to demonstrate a security interest in the operating account itself. Section 9–104 of the New York Uniform Commercial Code (McKinney's 1990) excepts from the reach of Article 9 the transfer of an interest in any deposit account, which is defined in § 9–105(1)(e) as "a demand, time, savings, passbook or like account maintained with a bank, savings and loan association, credit union or like organization." As a deposit account, Citicorp's rights in and to the operating account are governed by common law.

■ When monies are deposited in a deposit account, the property is transferred to the holding institution and a debtor/creditor relationship arises as between the institution and the depositor. The depositor's property is the debt owed to it by the bank, an intangible right consisting of a chose in action. *Miller v. Wells Fargo Bank International Corp.*, 540 F.2d 548, 560 (2d Cir.1976).

■ The transfer of an intangible right is done by pledge. At common law, a pledge is defined as a security interest in a chattel or in an intangible represented by an indispensable instrument for the purpose of securing the payment of a debt. Restatement of Security § 1 (1941). In order to perfect a pledge and create a lien it is essential that the pledgee have possession of the pledged property. At common law, the transfer of possession of an intangible property interest was accomplished by use of an indispensable instrument. Restatement, supra, at § 1 Comment e. This document then represented the intangible property right so that a pledge of the document was tantamount to a pledge of the right. "Pledge by Transfer of Instrument," 53 A.L.R.2d 1397, 1398 (1957).

Modern courts have grappled with applying the common law of pledge to the creation of a security interest in a deposit account, which is not represented by an indispensable instrument. The Court of

Appeals for the Second Circuit in addressing this issue in *Miller v. Wells Fargo Bank International*, 540 F.2d 548 (2d Cir. 1976), refined the traditional common law indispensable document rule to require that the pledgee of a deposit account have exclusive control and irrevocable authority over the account. In *Miller*, the court rejected the claimed security interest of a bank in and to an overseas account. The bank's possession of the only Telex key and key code was insufficient to establish that it alone had control over the account. See *Miller* at 563. The same analysis was employed by the court in *In re CJL Co., Inc.*, (Bank.D.Or.1987), 71 B.R. 261, in finding a bank's rights as pledgee of a deposit account to which it had exclusive control superior to the debtor which had lost the right to access those funds.

■ Looking at the case before the court in the light of *Miller*, Citicorp does not have a valid pledge under the common law. This is so despite the fact that while the security documents purport to unequivocally pledge the account to Citicorp, the bank did not have exclusive control over those funds.

When the debtor paid the $45,000 to debtor's counsel as a retainer, debtor's counsel acquired a common-law possessory lien in and to the fund which stands as security for payment of their fees. *Attorneys at Law*, N.Y.Jur.2d §§ 168–174. To the extent that the fees are subsequently earned, debtor's counsel is a secured creditor, secured by a possessory security interest in cash. N.Y.U.C.C. § 9–305. *In re Burnside Steel Foundry Company*, (Bankr.N.D.Ill.1988) 90 B.R. 942.

■ Objections have been raised by Forest City Management, Inc. and the Creditor's Committee to payment of debtor counsel's fees based in part upon the argument that there are other administrative expenses that remain owing and which are equally entitled to be paid. In addition, Citicorp argues that it has a first administrative priority expense claim under § 364(c)(1) as to the repayment of all its debt pursuant to an order entered by this court on July 26, 1990. The court finds that debtor's counsel has a prior secured right to the fund in its possession and that the fund, which constitutes a secured asset, cannot be invaded to pay other administrative costs and expenses. *In re Flagstaff Foodservice Corporation*, 762 F.2d 10 (2d Cir.1985).

■ Turning to the merits of the application itself, the court finds that the debtor's interests were ably represented by the services rendered by debtor's counsel. The case was difficult due in large part to the litigious position assumed by the debtor's major secured creditor, Citicorp, from the outset of the case. While the ultimate results may not be favorable, debtor's counsel is not a guarantor of success and is entitled to be reasonably compensated for the necessary services performed on behalf of its client during the pendency of the case. Although the entries in the application are not completely descriptive, nevertheless, the court is sufficiently familiar with the complex history of this case and the numerous court hearings to make a finding that the fee requested is reasonable compensation for the services performed.

Accordingly, the court hereby awards Lee and LeForestier a final fee of $63,012.00, plus expenses of $1,632.71. Since $15,000 of this sum has previously been allowed to date, an additional $48,012 in fees plus $1,632.71 in expenses may be taken against the retainer at this time.

The $1,732.29 balance remaining after deduction of the foregoing fees shall continue to be held by debtor's counsel subject to further order of this court.

The effect of this order is stayed for a period of ten days to permit Citicorp to present any additional facts which might contradict this court's findings and of which this court may be unaware regarding the nature of the debtor's operating account and Citicorp's asserted security interest in and to the $45,000 at issue.

It is so ORDERED.